UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DAVID W. VENESS and JULIE K. VENESS,
on behalf of themselves and others similarly
situated,

          Plaintiffs,

vs.

HEYWOOD, CARI & ANDERSON, S.C.,

          Defendant.

Case No.:  17-CV-338-bbc

---

### PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

---

This case centers on the alleged failure of Heywood, Cari & Anderson, S.C. ("Defendant") to comply with sections 1692g(a)(3) and 1692e(10) of the Fair Debt Collection Practices Act ("FDCPA") as a result of its practice of serving a form "Notice Required by the Fair Debt Collection Practices Act (The Act), 15 U.S.C. Section 192 as Amended" (the "Notice") on consumers who are defendants in state court debt collection lawsuits at the same time it served a summons and complaint on those consumers. Specifically, David W. Veness and Julie K. Veness ("Plaintiffs") allege that because the timing requirements for responding to a complaint in many state courts are often shorter in duration than the timing requirements for disputing a debt under 15 U.S.C. § 1692g, serving the Notice with a summons and complaint in such jurisdictions is likely to confuse the least sophisticated consumer as to when and how she needs to respond to the complaint, and in a worst-case scenario, can result in the consumer missing the deadline to respond to the complaint. Defendant denies any liability or that its practices violated the FDCPA.

1

The parties have reached an agreement to resolve this case whereby Defendant will create a non-reversionary settlement fund in the amount of $3,000. Notably, the settlement fund exceeds one percent of Defendant's book value net worth. *See* 15 U.S.C. § 1682k(A)(2)(B) ("in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector"). Thus, each of the 49 class members will receive more money as part of this settlement—at least $61 each—than they could have received if Plaintiffs prevailed at trial and on appeal.

Defendant also will pay—separate and apart from the monies paid to class members—full statutory damages of $1,000 to each of Mr. and Ms. Veness, Class Counsel's attorneys' fees and expenses up to $22,500 subject to Court approval, and the costs of administering the settlement and providing direct mail notice to each class member. Finally, Defendant has stopped the practice complained of through this lawsuit. Considering the statutorily-limited damages available to the settlement class under the FDCPA, the settlement represents an excellent result for these Wisconsin consumers.

Plaintiffs seek certification of the settlement class and preliminary approval of the settlement. Plaintiffs and their counsel strongly believe that the settlement is fair, reasonable, and adequate, and in the best interests of class members. As more fully set forth below, Plaintiffs respectfully request that this Court enter the accompanying order granting preliminary approval of the settlement. Defendant does not oppose this relief.

**Summary of the Settlement**

I.   **Plaintiffs' litigation efforts result in a meaningful cash recovery for Wisconsin consumers and a change in Defendant's debt collection practices.**

The parties engaged in protracted, arm's-length settlement negotiations at an early juncture to reach a sensible resolution to this matter. Ultimately, on November 8, 2017, the parties entered into their Class Action Settlement Agreement (the "Agreement"), a copy of which is attached to the Declaration of James L. Davidson ("Davidson Dec."), submitted herewith.

II.  **The settlement provides for cash payments to each class member in excess of the limits imposed by the FDCPA.**

The Agreement defines a settlement class under Rule 23(b)(3) comprised of:

All persons in the state of Wisconsin on whom, between May 5, 2016 and May 5, 2017, Heywood, Cari & Anderson, S.C. served a "Notice Required by the Fair Debt Collection Practices Act (The Act), 15 U.S.C. Section 192 as Amended" as part of a lawsuit it filed against such person in connection with the collection of a consumer debt.

Defendant avers that there are 49 class members, including Plaintiffs.

Each class member who does not exclude himself or herself from the settlement will receive a pro-rata share of the settlement fund. Thus, if every class member elects to participate in the settlement, each participating class member will receive $61.22. To the extent any settlement checks go uncashed after the claims administrator takes all reasonable steps to forward checks to any forwarding addresses, the remaining funds will be paid to the Marquette University Law School Legal Clinic as a *cy pres* recipient.

Separately, Defendant will pay $1,000 in statutory damages to each of Mr. and Mrs. Veness, and will pay the costs of notice and administration of the settlement. Subject to Court approval, Defendant also will pay an award of attorneys' fees and expenses to Class Counsel up to $22,500. Finally, Defendant will no longer serve the Notice as part of lawsuits it files against consumers in connection with the collection of a consumer debt.

### III. The Agreement provides for direct mail notice to all class members.

The settlement requires direct mail notice to each member of the class. The claims administrator will take all reasonable steps necessary to ensure that each class member receives direct mail notice, including updating addresses for any mail returned as undeliverable. A copy of the proposed notice is attached as Exhibit C to the settlement agreement. A class member will not need to take any action to participate in the settlement.

## Argument

### I. This Court should preliminarily certify the settlement class.

To certify the proposed settlement class, Plaintiffs must satisfy each of the four requirements of Fed. R. Civ. P. 23(a), as well as one of the requirements of Fed. R. Civ. P. 23(b). *See Chapman v. Bowman, Heintz, Boscia & Vician, P.C.*, No. 2:15-CV-120 JD, 2015 WL 9478548, at *2-3 (N.D. Ind. Dec. 29, 2015) (certifying FDCPA class action);[1] *Selburg v. Virtuoso Sourcing Grp., LLC*, No. 1:11-cv-1458-RLY-MJD, 2012 WL 4514152, at *2 (S.D. Ind. Sept. 29, 2012) (same). And in particular because certification is sought in the context of a settlement, the requirements of Rule 23(a) and 23(b)(3) are readily satisfied. *See*, *e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

#### A. Plaintiffs satisfy the requirements of Rule 23(a).

##### 1. The proposed class is sufficiently numerous that joinder is impracticable.

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of

---

[1] Internal citations and quotations are omitted, and emphasis is added, unless otherwise noted.

4

all members is impracticable." Fed. R. Civ. P. 23(a)(1). Where the class numbers at least 40, joinder is generally considered impracticable. *Simpson v. Safeguard Properties, LLC*, No. 13 CV 2453, 2014 WL 4652336, at *2 (N.D. Ill. Sept. 17, 2014) (citing *Swanson v. Am. Consumer Indus.*, 415 F.2d 1326, 1333 (7th Cir. 1969)).

Here, Defendant avers that there are 49 members of the class, including Plaintiffs. Moreover, class members are readily ascertainable because the class is defined by reference to objective criteria, and because Defendant can identify each class member by name and last-known address. Because the class is so numerous in that it exceeds 40 members, joinder would be impracticable and Plaintiffs have satisfied the numerosity element of Rule 23(a). *See Hoffmaster v. Coating Place, Inc*, Case No. 16-cv-258-wmc, 2017 WL 945107, at *2 (W.D. Wis. Mar 10, 2017) (Conley, J.) (finding numerosity satisfied with 78 class members); *Beard v. Dominion Homes Fin. Servs., Inc.*, No. 2:06-cv-00137, 2007 WL 2838934, at *4 (S.D. Ohio Sept. 26, 2007) (finding numerosity satisfied with 41 class members).

**2. Plaintiffs' claims present questions of law and fact common to the class.**

"To satisfy the commonality requirement of Rule 23(a)(2), a plaintiff must show that there are questions of fact or law that are common to all class members. This requirement is usually met where a class's claims arise out of some form of standardized conduct by the defendant. *Simpson*, 2014 WL 4652336, at *3 (citing *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) ("Common nuclei of fact are typically manifest where ... the defendants have engaged in standardized conduct towards members of the proposed class....")); *Chapman*, 2015 WL 9478548, at *3.

Here, the class members' claims stem from the same factual circumstances, in that Defendant served the Notice on each class member contemporaneously with the service of a state court debt collection lawsuit. That is, the acts taken by Defendant were all identical as to each class

member. Each class member, therefore, has the same claim against Defendant, and each class member's claim will rise or fall on the common legal question of whether Defendant's conduct violates the FDCPA. Accordingly, the commonality requirement is met. *See Hoffmaster*, 2017 WL 945107, at *2 ("… the class members share common alleged issues of fact and law, including: i. whether defendant maintained a common practice and policy of unlawfully failing to pay wages to plaintiff and members of the putative class for time spent donning and doffing protective sanitary uniforms; ii. the amount of unpaid work performed by plaintiff and members of the putative class; and iii. the proper measure of damages, if any, sustained by the named plaintiffs and members of the class."); *Lucas v. GC Servs. L.P.*, 226 F.R.D. 337, 340 (N.D. Ind. 2005) ("Courts consistently have found a common nucleus of operative facts if a defendant has allegedly directed standardized conduct toward the putative class members or if the class claims arise out of standardized documents.").[2]

### 3. Plaintiffs' claims are typical of the claims of the members of the class.

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Here, Plaintiffs and the members of the class encountered the same practice employed by Defendant through its service of the Notice at the same time it served a state court debt collection lawsuit. *See* Dkt. Nos. 1-1. 1-2. Thus, Plaintiffs possess the same interests and have suffered the same injuries as each class member and

---

[2] *See also Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 697 (S.D. Fla. 2004) ("Similarly, a plaintiff satisfies the commonality requirement when all class members received the same collection letter."); *Gradisher v. Check Enforcement Unit, Inc.*, 203 F.R.D. 271, 277 (W.D. Mich. 2001) ("Whether the notices or letters contained or were required to contain the debt validation notice required under § 1692g(a) is one example of a common question."); *Mann v. Acclaim Fin. Servs.*, 232 F.R.D. 278, 284 (S.D. Ohio 2003) ("In FDCPA cases, where plaintiffs have received similar debt collection letters ... courts have found common questions of law or fact sufficient to certify the class.").

assert identical claims and seeks identical relief on behalf of the unnamed class members. *See Chapman*, 2015 WL 9478548, at *3 ("The Court is satisfied that Chapman has met the typicality requirement. Chapman and the members of the class suffered from the common practice employed by Defendant by issuing standardized initial debt collection letters which allegedly did not contain proper disclosures mandated by the FDCPA.").

As a result, Plaintiffs' claims are typical of those of the class. *See Lucas*, 226 F.R.D. at 341 ("All of the class members' claims arise from the same practice of GC Services which gave rise to Plaintiffs' claims, that is each time Defendants sent a collection letter similar to that received by Plaintiffs, they allegedly violated the Fair Debt Collection Practices Act. Thus, Plaintiffs' claims are typical of the class because they arise from the same course of conduct and are based on the same general legal theory."); *Mann*, 232 F.R.D. at 284-285 ("Plaintiff alleges, *inter alia,* that the language in [Defendant's] initial communication violated both the FDCPA and the OCSPA. As was discussed *supra*, the class members' claims arise from the very same course of conduct by [Defendant]. While the extent of a class member's particular injuries may differ, because they all received communications containing the same language, the type of injury will generally be the same. Therefore, this Court concludes that the typicality element of Rule 23(a)(3) has been satisfied."); *Agan,* 222 F.R.D. at 698 ("Parties seeking class certification have satisfied the typicality requirement by showing that all prospective class members received a variation of the same collection letter.").

### 4. Plaintiffs and their counsel will fairly and adequately protect the class's interests.

Next, the Court must determine if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To adequately represent a class, a named plaintiff must show that she can act in a fiduciary role representing the interests of the class, and

7

has no interests antagonistic to the interests of the class. *See Chapman v. Worldwide Asset Mgmt., L.L.C.*, No. 04 C 7625, 2005 WL 2171168, at *4 (N.D. Ill. Aug. 30, 2005) ("Three elements must be satisfied: (1) the class representative cannot have antagonistic or conflicting claims with other members of the class; (2) the class representative must have a sufficient interest in the outcome to ensure vigorous advocacy; (3) counsel for the class representative must be competent, experienced, qualified and generally able to conduct the proposed litigation vigorously.").

Here, Plaintiffs have been model class representatives who have diligently pursued this case since its inception in order to obtain relief for absent class members. *See Selburg*, 2012 WL 4514152, at *9 ("Here, the court finds Plaintiff to be an adequate representative without any conflicts or antagonistic claims of the proposed class members. All members of the class received the allegedly deficient letter issued by Virtuoso and are challenging its validity under the FDCPA. The Plaintiff has a sufficient stake in the outcome and will be a zealous advocate of the class. In addition, counsel for named Plaintiff is experienced in class actions and other complex litigation and thus satisfies that requirement. Accordingly, the adequacy of representation requirement under Rule 23(a)(4) has been met.").

In addition, Plaintiffs have retained the services of counsel who are well-versed in class action litigation. Courts across the country have appointed Greenwald Davidson Radbil PLLC ("GDR") as class counsel in more than three dozen consumer protection class actions in the past several years, including those brought under the FDCPA. *See* Davidson Dec. at ¶ 6. Judge Carlton W. Reeves of the Southern District of Mississippi described GDR as follows:

> More important, frankly, is the skill with which plaintiff's counsel litigated this matter. On that point there is no disagreement. Defense counsel concedes that her opponent—a specialist in the field who has been class counsel in dozens of these matters across the country—'is to be commended for his work' for the class, 'was professional at all times' ..., and used his 'excellent negotiation skills' to achieve a settlement fund greater than that required by the law.

8

> The undersigned concurs ... Counsel's level of experience in handling cases brought under the FDCPA, other consumer protection statutes, and class actions generally cannot be overstated.

*McWilliams v. Advanced Recovery Systems, Inc.*, No. 3:15-CV-70-CWR-LRA, 2017 WL 2625118, at *3 (S.D. Miss. June 16, 2017). Thus, in addition to satisfying the adequacy prong of Rule 23(a)(4), GDR also satisfies the considerations of Rule 23(g). Accordingly, GDR, and its co-counsel Lein Law Offices, should be appointed to represent Plaintiff and the proposed class in this action.

### B. Plaintiffs satisfy the requirements of Rule 23(b).

In addition to meeting the four requirements of Rule 23(a) and the requirements of Rule 23(g), parties seeking class certification must demonstrate that the action is maintainable under one of the three subsections of Rule 23(b). Here, the settlement class satisfies Rule 23(b)(3).

#### 1. Common questions of law and fact predominate over any individualized inquiries.

The predominance factor "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. The objective of Rule 23(b)(3) is to promote economy and efficiency in actions that are primarily for money damages. Where common questions "predominate," a class action can achieve economies of time, effort, and expense as compared to separate lawsuits, permit adjudication of disputes that cannot be economically litigated individually, and avoid inconsistent outcomes, because the same issue can be adjudicated the same way for the entire class. Fed. R. Civ. P. 23(b)(3), advisory committee's note (1966).

The central legal issue before the Court is whether Defendant's form Notice violates the FDCPA. As a result, Plaintiffs satisfy the predominance requirement. *Jackson v. Nat'l Action Fin. Servs., Inc.*, 227 F.R.D. 284, 290 (N.D. Ill. 2005) (holding that "[a]s long as the letters that class

9

members received are very similar ... the legal issue of whether those letters violate the FDCPA is predominate"); *see also Hoffmaster*, 2017 WL 945107, at *2 ("The Rule 23 Class satisfies Fed. R. Civ. P. 23(b)(3) because common factual allegations and a common legal theory predominate over any factual or legal variations among class members."); *Day v. Check Brokerage Corp.*, 240 F.R.D. 414, 419 (N.D. Ill. 2007) (certifying FDCPA class action and finding predominance prong satisfied where similar debt collection letters were at issue).

### 2. A class action is superior to other available methods for the fair and efficient adjudication of Plaintiffs' claims.

To determine if the superiority requirement of Rule 23(b)(3) is satisfied, the Court must consider (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3). Because the claim in this case arises from uniform conduct by Defendant, a class action is the superior vehicle for determining the rights of absent class members.

Here, no one member of the class has an interest in controlling the prosecution of the action because the claims of all members of the class are identical, as the allegations involve standardized conduct. In certifying FDCPA claims, the Southern District of Indiana explained:

> A class action is superior to all other methods in this case as it will efficiently resolve a potentially large number of claims that share a similar set of legal and factual issues. In the absence of class certification, the courts could potentially be inundated with "many individual cases that seek to litigate an essential core of the same legal and factual issues." *Lucas*, 226 F.R.D. at 342. These separate actions would be "repetitive, wasteful and an extraordinary burden on the courts[,]" so a class action is necessary here. *Tatz v. Nanophase Technologies Corp.,* No. 01–C–8440, 2003 WL 21372471, at *9 (N.D. Ill. June 13, 2003).

10

> Even more, individual suits would be unlikely, as recipients of the collection letter may be hesitant to prosecute individual claims without the availability of the cost-sharing efficiencies of a class action. Indeed, "individual recovery under the FDCPA can be relatively small, and many consumers are unfamiliar with its protections, [so] a class action is the best method for the fair and efficient adjudication of [this] issue[,] ... where the underlying liability issue can be determined relative to the whole class." *Balogun,* 2007 WL 2934886, at *8; *see also Parker,* 206 F.R.D. at 213 (finding class action a superior method because damages awarded to individual class members may be too insignificant to provide enough incentive for them to pursue their FDCPA claims individually).
>
> At its core, a class action is the appropriate way to proceed in this action.

*Selburg*, 2012 WL 4514152, at *10; *see also Lucas*, 226 F.R.D. at 342-43 ("[A] class action is superior to individual action in this case because litigation costs are high and the likely recovery is limited. Thus, recipients of the letter are unlikely to prosecute individual claims without the availability of cost-sharing efficiencies of a class action. Furthermore, many of the persons in this class may be unaware that the form letter sent by GC Services may violate the FDCPA and a class action suit may help them to safeguard their rights. Public policy encourages that cases of this type proceed as class actions in order to put an end to any illegal activity that may be occurring."); *Hoffmaster*, 2017 WL 945107, at *2 ("Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually."). As a result, a class action is the superior method to adjudicate the claims here.

## II. The Court should preliminarily approve the settlement as fair, reasonable, and adequate under Fed. R. Civ. P. 23(e).

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *see also Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 313 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ("Settlement of the complex disputes often involved in class actions minimizes the litigation

11

expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources."). While settlements are favored, Rule 23(e) requires that the Court make a preliminary determination of fairness:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

MANUAL FOR COMPLEX LITIGATION §21.632 (4th ed. 2004); *see also* 4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 11.25 (4th ed. 2002). After the preliminary fairness evaluation has been made, the class has been certified for settlement purposes, and notice has been issued, the Court holds a final fairness hearing to show that the proposed settlement is truly fair, reasonable, and adequate. *See* MANUAL FOR COMPLEX LITIGATION § 21.633-34; 4 NEWBERG, *supra* at § 11.25.

Preliminary approval requires only that the Court evaluate whether the proposed settlement "is within the range of possible approval." *Armstrong*, 616 F.2d at 314. The Seventh Circuit has identified a number of factors used to assess whether a settlement proposal is fundamentally fair, adequate, and reasonable: (1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Each relevant factor supports the conclusion that the settlement is fundamentally fair, adequate, and reasonable.

### A. The strengths of Plaintiffs' case and the risks inherent in continued litigation and securing class certification favor preliminary approval.

Every class action—indeed, every case—involves some level of uncertainty on the merits. Here, the parties disagree about the merits, and there is uncertainty about the ultimate outcome of this litigation and whether a class would be certified. Given these considerations, preliminary approval of the settlement is appropriate to avoid the uncertainties of continued litigation. *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *3 (E.D. Mich. Dec. 12, 2013) ("Settlement provides a certain and immediate benefit to the class members and outweighs the risk and cost of a trial on the merits. The prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery.").

### B. The stage of the proceedings and experience and views of counsel favor preliminary approval.

During the pendency of this litigation, the parties were able to assess the relative strengths and weaknesses of their respective positions, and to compare the benefits of the proposed settlement to further litigation. The parties exchanged informal discovery, including information regarding the net worth of Defendant, class damages, and the number of potential class members. Counsel, who have substantial experience in litigating class actions, and the Court are therefore adequately informed to evaluate the fairness of the settlement. Both Plaintiffs and their counsel firmly believe that the settlement is fair, reasonable, and adequate, and in the best interests of the class. *See Swift v. Direct Buy, Inc.*, Cause Nos. 2:11–CV–401–TLS, 2:11–CV–415–TLS, 2:11–CV–417–TLS, 2:12–CV–45–TLS, 2013 WL 5770633, at *7 (N.D. Ind. Oct. 24, 2013) ("Third, as the Court has already noted, the 'opinion of competent counsel' supports a determination that the settlement is fair, reasonable, and adequate under Rule 23.").

### C. The cash relief afforded by the settlement—when compared to the limitations on damages imposed by the FDCPA—favors preliminary approval.

In evaluating the fairness of the consideration offered in settlement, it is not the role of the Court to second-guess the negotiated resolution of the parties. "[T]he court's intrusion upon what is otherwise a private, consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

The issue is not whether the settlement could have been better in some fashion, but whether it is fair: "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* at 1027. As explained by the Northern District of Indiana in approving a class action settlement in *Swift*:

> Although $20 (the expected pro rata award of the net settlement fund for each class member who filed a claim notice) is not significant in a vacuum, "a dollar today is worth a great deal more than a dollar ten years from now," *Reynolds,* 288 F.3d at 284, and a major benefit of the settlement is that class members will obtain these benefits much more quickly than had the parties not settled. The parties have informed the Court that this case, were it to proceed, would face numerous challenges such that, even if the case reached trial, the class members would not receive benefits for many years, if they received any at all. Faced with the prospect of receiving no recovery—both because DirectBuy might have succeeded in any aspect of what would have been a vigorous defense absent settlement and because DirectBuy had no unencumbered assets—Class Counsel is confident that payment of up to $20.00 per household is an excellent result in this litigation. The parties assert that because the only amount the Plaintiffs could hope to recover after an award of damages is zero, a settlement involving any cash should be considered adequate

2013 WL 5770633, at *5.

The settlement here provides immediate cash relief to class members in excess of the limits

imposed by the FDCPA. In particular, the FDCPA limits statutory damages to a maximum of one percent of Defendant's net worth. *See* 15 U.S.C. § 1682k(A)(2)(B). Here, Defendant will pay a total of $3,000 to absent class members—an amount that exceeds one percent of its book value net worth. Moreover, each participating class member stands to receive over $61.

Because the class will receive statutory damages in excess of what it could receive had Plaintiffs prevailed at trial and on appeal, the settlement is fair, reasonable, and adequate. As a result, the Court should preliminarily approve the settlement.

### D. The Court should approve the proposed notice plan.

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." *See* Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Here, the parties have agreed to a notice program to be administered by a third-party class administrator—First Class, Inc.—that will use all reasonable efforts to provide direct mail notice to each potential class member. This notice plan complies with Rule 23 and due process because, among other things, it informs class members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the class and claims asserted; (3) the fact that class members will release their claims if they do not request exclusion; (4) the process for submitting a claim, objection, or exclusion, including the time and method for objecting or requesting exclusion and that class members may make an appearance through counsel; (5) information regarding Plaintiffs' request for reimbursement of their attorneys' fees and expenses; and (6) how to make inquiries and where to find additional information. Fed. R. Civ. P. 23(c)(2)(B); MANUAL FOR COMPLEX LITIGATION § 21.312. A copy of the proposed notice is attached as Exhibit C

to the settlement agreement. In short, this notice plan ensures that class members' due process rights are amply protected and should be approved. *See* Fed. R. Civ. P. 23(c)(2)(A).

### E. The Court should schedule a final fairness hearing.

The last step in the settlement approval process is a final fairness hearing at which the Court may hear all evidence and argument necessary to make its final settlement evaluation. Fed. R. Civ. P. 23(e)(2). Proponents of the settlement may offer argument in support of final approval. In addition, settlement class members who have properly objected to the settlement may be heard at this hearing. The Court will determine after the final approval hearing whether the settlement should be approved, and whether to enter a judgment and an order of dismissal under Rule 23(e). The parties respectfully request that the Court set a date for a hearing at the Court's convenience, between 90 and 120 days after the Court's preliminary approval of the settlement.

### Conclusion

Plaintiffs respectfully request that the Court preliminarily approve of the above-described, class action settlement. As noted, Defendant does not oppose the relief requested herein.

Dated: November 16, 2017
/s/ *James L. Davidson*
James L. Davidson
Greenwald Davidson Radbil PLLC
5550 Glades Road, Suite 500
Boca Raton, FL 33431
Telephone: 561.826.5477
Fax: 561.961.5684
jdavidson@gdrlawfirm.com

Matthew C. Lein
State Bar No. 1084028
Lein Law Offices
15692 Highway 63 North
Hayward, WI 54843
Phone No.: 715-634-4273
Fax No.: 715-634-5051
Email: mlein@leinlawoffices.com

        Counsel for Plaintiffs and the proposed class

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was filed using the Court's CM/ECF system, on this 16th day of November 2017, which will send notice to Defendant's counsel of record:

David J. Hanus
Alyssa A. Johnson
Attorneys for Defendant Heywood, Cari & Anderson, S.C.
HINSHAW & CULBERTSON LLP
100 E. Wisconsin Avenue, Suite 2600
Milwaukee, WI 53202

Counsel for Defendant

        */s/ James L. Davidson*
        James L. Davidson